## NEW YORK SUPERIOR COURT.

JOHN C. WALKENSHAW and another, survivors, &c., of HER-MAN A. SCHLUCHER, on behalf of themselves, and all other creditors of the firm of " JOHN G. PERZEL," electing to come in, &c. agt. JOHN G. PERZEL.

*Loans* of money by a *special partner,* upon securities or otherwise, to a limited partnership, for partnership purposes, or for enlarging the means of carrying on the business, are expressly permitted by the statute. That is, such loans do not come within the statute penalty of making the *partnership general.*

Whenever a limited partnership is *insolvent within the meaning of the statute* (1 *R. S.* 766, § 20), *any creditor at large* is entitled to have its affairs wound up, and its assets distributed *pro rata* among those of its creditors who have not obtained a specific lien.

It is essential, however, before taking away the control of the assets of a limited partnership from members of the firm on the ground of *insolvency,* to ascertain whether all who have an interest in their retention of such control are before the court *as parties.*

On the death of a *special partner* in a limited partnership, which is indebted to him for money loaned for the partnership business, his *executors* represent him in his individual claim for money loaned, and also represent him as to any interest the estate may have in carrying on the partnership.

Therefore, it is for such executors to determine, with or without the sanction of the court, whether it is most for the interest of the estate they represent, to *continue the partnership,* or urge their claim for *money lent.*

And in an action by the *survivors of the special partners,* and all others who may come in, &c., against the general partners to wind up the partnership on the ground of insolvency, and for a receiver, &c., the *executors* of the special partner should be made *parties ;* and as they may represent conflicting interests of the testator as to carrying on the partnership business, or destroying it, and enforcing the claim of the testator for advances, they should be *made defendants.*

What is *insolvency?* It is true that "insolvency" and "inability to pay," are synonymous ; but *solvency* does not mean ability to pay at all times, under all circumstances, and everywhere, on demand; nor does it require that a person should have in his possession the amount of money necessary to pay all claims against him. *Difficulty in paying particular demands is not insolvency :*

*Held,* that the *insolvency of the partnership in this case* was not so clearly made out as to warrant any interference by the court.

*Special Term, October,* 1866. *Decided November* 12, 1866.

THIS is an application for a receiver of the property of a firm whose business was heretofore carried on under the name of the defendant, whereof the deceased partner of the firm of the plaintiffs (Herman A. Schlucher) was a member, and for an injunction against the continuance of the business,

and disposition of, or other interfence with the assets of such firm. The prayer for relief in the complaint is, that the property of such firm be sold, and its debts, as established in this action, so far as the proceeds may extend, be paid rateably, and for a receiver and injunction. It was made on a sworn complaint and affidavits, and resisted on affidavits.

In the year 1865 (October), the defendant and the deceased partner of the plaintiffs (Schlucher), entered into articles of agreement under seal, whereby they formed a limited partnership for the manufacture of woolen goods in the city of New York, under the name of "John G. Perzel," to continue for five years, or until September, 1871, unless sooner dissolved, by (six months) notice given by either party to that effect.

The defendant, who was the general partner, agreed to contribute to the common stock as capital, the machinery, stock and capital, then used by him at a certain place in the city of New York (corner of Twenty-third street and First avenue), at a price to be agreed upon or determined by appraisers, and also a patent for "recovering wool from mixed fabrics." The deceased (Schlucher), who was to be the special partner, agreed to contribute a certain sum (20,000), as special capital. A certain per-centage (fifteen per cent) was to be allowed for depreciation of such machinery every year, in estimating the defendant's share of the profits. Interest was to be allowed to both parties on the amount they contributed, the defendant being entitled to three-fifths of the profits, and the rest (two-fifths) went to the special partner. The defendant was to be allowed to take the machinery at its appraised value on the termination of the partnership. It was further provided therein, that notwithstanding the death of the special partner before the time fixed therein, the capital contributed by him *should remain, and the business be conducted until the partnership terminated, for the benefit of his representatives.* Other provisions not material to the questions involved in such applications, were contained in such last agreement.

Sometime afterwards, during the same month, such firm

agreed for a certain sum ($50,000) to buy for its own use two pieces of land, with the appurtenances, consisting of buildings and machinery in them, in the city of Brooklyn, in William and King streets, near Van Brunt street.

On the first of November of that year, such special partner entered into an agreement under seal with such firm, to advance all the money necessary to complete such purchase and pay for such lands, taking and holding as security for his repayment, the contract and deed for such land, and giving a mortgage for such part of the purchase money as should be required. By the same agreement such firm agreed to repay such special partner such sum so advanced, on or before the termination of its partnership, and to keep such property insured, and to pay all taxes thereon, and interest of mortgages. But it was further stipulated therein, that such land should be the property of such firm.

On the fifteenth of the same month (November), the parties to such firm agreed that a certain sum ($2,000) should be charged yearly to profit and loss, for depreciation in the value of the property so bought in Brooklyn.

The special partner, besides the sum so advanced by him on such purchase, lent in his life to such firm large sums of money, amounting in all to over *forty-five thousand dollars,* which is still unpaid. The firm of " Schlucher, Walkenshaw & Co.," composed of the plaintiffs and the deceased special partner in such limited partnership, also advanced thereto at various times between the first of November, 1865, and the beginning of last January, a certain sum ($13,000), the balance on which ($5,628.92), is still unpaid. The time for which the separate loans by the special partner were made, is in controversy in an action between the defendant and the executors of such partner.

In July last the special partner of such firm departed this life, leaving a last will and testament, appointing therein as executors thereof, Messrs. Poppenheusen and Von Ams, who have commenced an action in the supreme court against the defendant for the dissolution of such limited partnership. In an affidavit made by them and used on this motion, they

state that the defendant admitted to them that the duration of the loan of forty-five thousand dollars, made by their testator, was not fixed.   Other actions have been commenced for the recovery of claims against such partnership, for nearly fifty-five hundred dollars.   An attachment has been issued in some, on the ground of a removal by the defendant of goods to defraud creditors.   Loans were procured on other goods by the defendant.   The work in the manufactory has been stopped, and insurance companies have cancelled their policies, because of the withdrawal of a watchman from the premies.

The property of such limited partnership now consists of 1st. Their manufactory and lands used therewith, which is subject to a mortgage of $53,000.   2d. The machinery in it which cost about $68,000.   3d. Manufactured stock and raw material on hand, and a claim for work done, estimated by the defendant at nearly $10,700, part whereof is pledged for advances thereon.   The affidavit of the executor of the deceased partner stated that such manufactory is not worth more than the incumbrances upon it; that the machinery in it will not bring more than two-thirds of its cost, and the stock on hand is only available for a like proportion, making the assets about fifty-two thousand dollars.   An affidavit produced on the part of the defendant of a disinterested witness (Coleman), made the manufactory worth $75,000, being $22,000 of available value beyond the incumbrance; the machinery worth its full cost, or $68,000, thereby adding $22,000 more, above the estimate of such partners, being in all about $45,000 more, or $97,000.   The amount of ·debts due by such firm, except those to Mr. Schlucher individually, are about $24,000.

The executors of the special partner obtained an injunction against the defendant, from interfering with the partnership property, which has been dissolved with a privilege of renewal ·on new affidavits.   An affidavit was read for the defendant of offer of large custom to the factory·in question. Other facts appear in the opinion of the court.

Ira D. Warren, *for plaintiffs.*
J. L. Jernegan, *for defendant.*

Robertson, C. J.  The death of the special partner (Schlucher) in the limited partnership in question, must undoubtedly have been the main cause of the embarrassment of the establishment it was designed to carry on.  It is evident that on the starting such enterprise, and down to the time of his death, he made the advances he did, believing it to be profitable, and that he was amply secured.  He knew that he had agreed to leave his capital in it until the end of the limited partnership, and also to give credit on his advances for the purchase of the ground on which the manufactory stood, for the same time ; and yet he advanced in addition a large amount of the funds of the firm of which the plaintiffs are members, up to within a few months of his death, and they have made advances since.  He does not appear to have taken any steps to collect the amount due for such advances, or while he lived to have lost confidence in the undertaking.  Whether the moneys due the plaintiffs are in danger from the insolvency of such firm, is the question before me.

Merely borrowing money however much, for partnership purposes, even of a special partner, or enlarging the means of carrying on a business, does not come within the prohibition of the statute.  (*N. Y. Sess. Laws* 1857, *ch.* 414, §2, *and* 1858, *ch.* 289 ; 3 *R. S.* 5*th ed.* 63, § 12.)  Alterations in the names of the general partners, the *nature of the business, or capital or shares contributed* by special partners in a limited partnership, under the penalty of making it general.  Loans by special partners, upon securities or otherwise, are expressly permitted.  (*Laws of* 1857 ; *Id.* § 3 ; 3 *R. S.* 5*th ed.* 64, § 17.)

The partnership in this case, therefore, remained a limited one to the time of the death of the special partner, and if insolvent within the meaning of the statute (1 *R. S.* 766, § 20), any creditor at large is entitled to have its affairs wound up, and its assets distributed *pro rata* among those

of its creditors who have not obtained a specific lien (*Jones agt. Lansing*, 7 *Paige's Rep.* 583).

It is essential, however, before taking away the control of the assets of a limited partnership from members of the firm on the ground of insolvency, to ascertain ,whether all who have an interest in their retention of such control, are before the court as parties. The estate of the deceased special partner (Mr. Schlucher), has two separate claims upon, and one interest, in the assets of such partnership. He is represented only by the plaintiffs as to his interest in the claims of the firm of which they are members, as his survivors. As to his individual claim, his executors represent him, and he is also represented by them as to any interest the estate may have in carrying on the partnership. But as the two last interests may conflict, it is for such executors to determine, with or without the sanction of the court, whether it is most for the interest of the estate they represent to continue the partnership, or urge their claim for money lent. The provision of the Revised Statutes as to suing the general partners, or their being sued alone. (1 *R. S.* 766, § 14), does not apply to such an action. The words of the statute are "*in relation to the business of the partnership,*" and refer merely to claims by or against them as a partnership. It would be manifestly unjust to deprive the special partner of the right of being heard on the question of breaking up the partnership. Such executors, therefore, ought to have been made parties to the action, and as they may represent conflicting interests of the testator as to carrying on the partnership business, or destroying it, and enforcing the claim of their testator for advances, they should most properly be defendants. Of course, if they decide without the sanction of the court, which policy to pursue, they may be responsible to the next of kin or legatees of their testator, for any indiscretion in the matter. There is also another strong reason why they should be made parties, irrespective of any question of insolvency. Their testator covenanted that the partnership should continue, and the capital put in by him remain in it for several

years. Such covenants are frequently introduced in partnership articles for an enterprise of a similar kind (*Story on Part.* § 199); and in general partnerships it has been held that executors are liable to damages for withdrawal of a testator's capital, or may be compelled specifically to perform his covenant by allowing it to remain. (*Story on Part.* § 196; *Coll. on Part.* § 119; *Balmam* agt. *Shore*, 9 *Ves. Rep.* 500; *Crawshay* agt. *Maule*, 1 *Swanst. Rep.* 495, 510; *Pearce* agt. *Chamberlain*, 2 *Ves. Rep.* 33; *Gratz* agt. *Bayard*, 11 *Serg. & Rawl. Rep.* 41.) But in such cases, the executor, if he received the profits as legal owner of the capital invested, might be made liable for the contract entered into by such partnership. And a *mere omission* to give notice of a dissent, where the executors are vested with a discretion, may make them partners (*Coll. on Part.* § 232). But the amendment of the law in 1857 (*ch.* 414, § 2), requires, in order to prevent the dissolution of a limited partnership by the death of any of the partners, not only a specification in the articles of partnership *that in such event the partnership shall continue,* but also the assent of " the heirs or legal representatives " of the partner dying. In which event it provides that the " heirs or legal representatives " of such parties " may succeed " to his partnership rights, and " continue the business," the same as if " he had remained alive." This, I apprehend, requires some positive act of assent, by heirs or legal representatives (meaning of course by heirs, as in all other cases, " next of kin " or legatees, as there may or may not be a will), and not mere silent acquiesence. Since it seems no more than right that persons subsequently dealing with the partnership should know whether the representatives of a deceased special partner elect to dissolve the partnership and become mere creditors, or carry it on. It does not appear in this case whether the executors of the special partner have or not assented. Their action in the supreme court may have been on other grounds; at all events, it seems the injunction in it was once dissolved, although liberty was given to renew.

But as the defect of parties may possibly be remediable,

by continuing the injunction until they could be added, it becomes necessary to consider the question of insolvency. Upon this, as I have already suggested, it may be assumed that Mr. Schlucher, who was joint owner with the plaintiffs of their present claim, did not seem up to the time of his death, *nor did they in the advances they made afterwards,* suspect insolvency. A large establishment like that in question, consisting of extensive buildings and grounds, valuable machinery, materials, raw and worked up, an established name, and with prosperous business, as sworn to by Mr. Coleman, may be broken up and sold in fragments, so as to realize but little, and yet if allowed to go on may clear off its liabilities. In such case the appointment of a new trustee in the shape of a receiver in place of the defendant, who is also a trustee, and not charged directly with any such misconduct as even in the case of an ordinary partnership would authorize a dissolution, should be based only on the clearest evidence of insolvency.

It is true that "*insolvency*," and "*inability to pay*," are synonymous, but solvency does not mean ability to pay at all times, under all circumstances, and everywhere on demand, nor does it require that a person should have in his possession the amount of money necessary to pay all claims against him. Difficulty in paying particular demands is not insolvency (*Cutler* agt. *Sanger*, 2 *H. J. R.* 467).

The definition in *Herrick* agt. *Borst* (4 *Hill's Rep.* 650), that *solvent* means one who has "his property in such a situation that all his debts may be collected out of it by legal process," is much more exact. Even if this perhaps might on a strict construction, require the court to determine the problem whether within the time of notifying a sale on execution, the money could not be raised on such property, by sale or otherwise. The evidence in this case falls short of it. In this case, if the partnership can be continued, if not insolvent, the claims of Mr. Schlucher's estate are not due, except $45,000, until 1870; and there are only $24,400 more, including those of the plaintiffs, who may be destroying their deceased partner's interest to the extent

of over fifty thousand dollars, to collect a claim of not six thousand. This makes a present debt of nearly seventy thousand dollars, while taking Mr. Coleman's estimate, the factory over and above the mortgage, the machinery and goods on hand, exceed in value one hundred thousand dollars. I therefore do not find the insolvency so clearly made out as to warrant any interference.

The motion to continue the injunction and for a receiver, must, therefore, be denied, with ten dollars costs, without prejudice to the plaintiffs' right to renew the motion on making the executors of Mr. Schlucher parties, and on affidavits showing insolvency more clearly, or the dissent of such executors from carrying on such partnership.